UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE COLE,

       Petitioner,

   v.

MILLICENT WARREN,

       Respondent.[1]

       CASE NO. 2:08-CV-11109
       JUDGE PAUL D. BORMAN
       MAGISTRATE JUDGE PAUL J. KOMIVES

# REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION .................................................................. 2
II.   REPORT ................................................................................ 2
    A.    *Background* ................................................................. 2
    B.    *Legal Standard* ............................................................ 11
    C.    *Analysis* .................................................................. 13
    D.    *Recommendation Regarding Certificate of Appealability* ................... 17
        1.     Legal Standard ........................................................ 17
        2.     Analysis .............................................................. 18
    E.    *Conclusion* ............................................................... 19
III.  NOTICE TO PARTIES REGARDING OBJECTIONS ................................. 19

\*    \*    \*    \*    \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus. However, the Court should grant petitioner a certificate of appealability with respect to her claims.

II.   REPORT:

A.    *Background*

Petitioner Jacqueline Cole is a state prisoner, currently confined at the Huron Valley

---

[1] By Order entered this date, Millicent Warren has been substituted in place of Clarice Stovall as the proper respondent in this action.

Correctional Facility-Women's in Ypsilanti, Michigan. On October 27, 2004, petitioner was convicted of embezzlement over $20,000, MICH. COMP. LAWS § 750.174(5)(a), pursuant to her guilty plea in the Lenawee County Circuit Court. On November 22, 2004, a Presentence Report (PSR) was prepared, calculating a Michigan Sentencing Guidelines range of 5-23 months' imprisonment on the minimum term of imprisonment. On December 15, 2004, a supplement to the PSR was prepared, containing additional information from Dr. Thomas Johnson, petitioner's former employer, and from Paige Eby, petitioner's former business partner. Dr. Johnson indicated that he had fired petitioner for embezzling money and fraudulently billing insurance companies. He could not prove that she took the money, but there was a $40,000 discrepancy in his records and he was certain she was responsible. Ms. Eby claimed that petitioner had taken money from the business account without Eby's knowledge, and had forged Eby's name to obtain money at a bank. Petitioner signed over her share of the business to Eby, in exchange for Eby agreeing not to press charges.

Petitioner, represented by attorney James Daly, appeared for sentencing on December 16, 2004. At sentencing, petitioner acknowledged that she had read the supplement to the PSR and discussed it with her attorney. *See* Sentence Tr., at 2. With respect to the PSR, the following exchange occurred between the trial court and counsel:

> THE COURT: Mr. Daly, do you wish to challenge the accuracy or relevancy of any information in the pre-sentence investigation report or supplement?
>
> MR. DALY: Only as it relates to the reference to Dr. Johnson on what had happened there. Mrs. Cole indicates that she absolutely was not involved in any fraudulent activity with that. That she is working with the adjuster and whatever has happened with Dr. Johnson she did not embezzle any money there, period. That she wanted to make sure that I informed the

|||
|---|---|
| | court of that. |
| THE COURT: | You want to have a hearing in that regard, Mr. Daly? |
| MR. DALY: | No, I do not, Your Honor. As it relates to her employment – not the employment but that business venture, she has gotten out of that. All monies are cleared up on that, straightened away. Her partner in that matter is not owed a dime by Mrs. Cole at this time.<br>As it relates to the accuracy of the pre-sentence that's the only issues I have. I have some remarks about the sentencing if the court wants me to address those now. |
| THE COURT: | In just a minute. My question to you: Do you wish to have a hearing on either one of those two? We can call those people as witnesses, Mr. Daly, if you wish. |
| MR. DALY: | Your Honor, I would like the record to reflect that I asked Ms. Cole if she wants a hearing on that matter. She could have one. I advised her it is not in her best interests to have a hearing on that and she agreed not to have a hearing. |

*Id.* at 2-3.

After hearing argument from counsel and allocution from petitioner, the trial court imposed its sentence. The court first noted that it had previously held the Michigan Sentencing Guidelines unconstitutional, and thus were not binding. In determining the sentence, the court noted the gravity of petitioner's offense, and petitioner's significant history of theft and embezzlement convictions. *See id.* at 6-7. The court also noted the crimes reflected in the supplement to the PSR:

> When we look at your subsequent record we have the supplemental report. You were a partner with Ms. Ebby [sic] and you were in business. And while you were in business with her you stole $6,500. That was all the time that you were being prosecuted for this. That's absolutely appalling to me. I have never seen anything like that in my life.
> Then Dr. Johnson alleges that he was $40,000 that is missing and that you were billing, banker and bookkeeper. That he has been kicked out of Blue Cross and Blue Shield and he has a $40,000 discrepancy in his records. That his family was deeply hurt because of their personal relationship with you and considered you to be a very close friend, just like in this case.

3

*Id.* at 7-8. Finally, the court noted that the restitution in the case was $165,093.61, the highest amount it had ever seen, and that only $10,000 had been paid back.

The court indicated that it was not bound by guidelines, having determined them to be unconstitutional, and thus without applying the guidelines would sentence petitioner to a term of 80-120 months in prison. *See id.* at 8. The court also noted, however, that even if the guidelines applied it would find substantial and compelling reasons to depart upward from the guidelines. Specifically, the court found that the sentencing guidelines did not adequately take into account petitioner's post-offense behavior and the amount embezzled. *See id.* at 8-9. The court explained: "I have never seen a case like this before. I have never seen anybody that is as slick as you or as professional as you in gaining the trust of other people and stealing them blind. I have never seen anything like it." *Id.* at 9-10.

Petitioner requested the appointment of counsel, and attorney C. Lance Cooper was appointed to represent petitioner. Mr. Cooper filed a brief on appeal, raising the following claim:

> THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY DENYING CHALLENGE [sic] THE VALIDITY OF SENTENCING GUIDELINES AND USING FACTORS INCORPORATED IN THE SENTENCING GUIDELINES CALCULATIONS TO IMPOSE AND [sic] UPWARD DEPARTURE IN SENTENCING DEFENDANT.

Mr. Cooper subsequently filed a delayed application for leave to appeal. On May 3, 2005, petitioner retained current counsel to represent him on appeal. Mr. Cooper died shortly thereafter. Before new counsel could file a corrected application for leave to appeal, the Michigan Court of Appeals denied petitioner's application for leave to appeal in a standard order. *See People v. Cole*, No. 261548 (Mich. Ct. App. May 20, 2005). Petitioner, through counsel, filed a motion for reconsideration alleging that Mr. Cooper's appellate representation was ineffective, and a corrected

4

application for leave to appeal, raising three claims:

> I. WHERE THE TRIAL COURT REFUSED TO APPLY THE MICHIGAN SENTENCING GUIDELINES ON THE GROUNDS THE TRIAL COURT FOUND THE GUIDELINES UNCONSTITUTIONAL AND REFUSED TO FOLLOW THE DECISION OF THE MICHIGAN SUPREME COURT TO THE CONTRARY, THE SENTENCE WAS IMPOSED IN VIOLATION OF THE LAW AND DEFENDANT SHOULD BE RESENTENCED BEFORE A DIFFERENT JUDGE.
>
> II. WHERE THE TRIAL COURT DID NOT STATE SUBSTANTIAL AND COMPELLING REASONS FOR THIS EXTREME DEPARTURE ABOVE THE STATUTORY SENTENCING GUIDELINES RANGE, DEFENDANT MUST BE RESENTENCED BEFORE A DIFFERENT JUDGE.
>
> III. DEFENDANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL STATED THAT DEFENDANT ADAMANTLY DENIED AN ACCUSATION THAT SHE HAD COMMITTED A SUBSEQUENT OFFENSE BUT DECLINED THE JUDGE'S OFFER OF AN EVIDENTIARY HEARING ON THE ISSUE.

The trial court denied the motion for reconsideration, and refused to accept the corrected application for leave to appeal for filing. Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the three claims asserted in her corrected application in the Michigan Court of Appeals. The Michigan Supreme Court denied the application for leave to appeal in a standard order. *See People v. Cole*, 474 Mich. 1085, 711 N.W.2d 42 (2006).

Petitioner subsequently filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.509. As set forth in her appellate brief, petitioner raised three claims for relief:

> I. THE TRIAL COURT ABUSED ITS DISCRETION BY REFUSING TO GRANT RELIEF FROM JUDGMENT WHERE NEWLY ACQUIRED EVIDENCE SUGGESTED THE COURT'S SENTENCE WAS BASED ON MISINFORMATION PROVIDED BY TWO PEOPLE WHO LATER FACED FELONY CHARGES INVOLVING FRAUD.

II. APPELLANT COLE WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL WHERE TRIAL COUNSEL FAILED TO ACCEPT THE COURT'S OFFER OF AN EVIDENTIARY HEARING REGARDING THE ALLEGATIONS OF EMBEZZLEMENT BY APPELLANT DURING THE PENDENCY OF HER CASE.

III. THE LENGTH OF THE DEPARTURE FROM THE SENTENCING GUIDELINES WAS DISPROPORTIONATE TO THE CRIME AND THE OFFENDER IN VIOLATION OF THE EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.

The trial court denied the motion without holding an evidentiary hearing, and the Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders. *See People v. Cole*, 480 Mich. 859, 737 N.W.2d 747 (2007).

Petitioner, through counsel, filed the instant application for the writ of habeas corpus on August 1, 2008. As grounds for the writ, she contends that her trial counsel was ineffective for failing to request an evidentiary hearing at sentencing to challenge the allegations of post-offense conduct, and that her original appellate counsel was ineffective for failing to raise this claim on direct appeal. Respondent filed her answer on September 22, 2008. She contends that petitioner's trial counsel claim is barred by her procedural default in failing to raise the claim on direct appeal, and that the ineffective assistance of counsel claims are without merit. On September 14, 2009, I entered an Order granting petitioner's motion for an evidentiary hearing. The hearing was held on January 8, 2010.

The first witness at the evidentiary hearing was James Daly, petitioner's trial counsel. Mr. Daly testified that he received the supplemental presentence report shortly before sentencing, and met with petitioner to discuss the allegations raised in the supplemental report. Petitioner denied the allegations of embezzlement. From speaking with petitioner, he got the impression that the allegations regarding Eby were nothing more than a business dispute between petitioner and Eby.

He also testified that petitioner informed him that she was cooperating with Blue Cross in its fraud investigation of Dr. Johnson. *See* Evid. Hr'g Tr., at 8-10. He did not recall whether petitioner informed him to contact John Southworth, the Blue Cross investigator, but did not dispute that she may have done so. *See id.* at 10. Daly recalled having an in-chambers conference with the trial judge prior to sentencing. At that conference, he was advised that petitioner was likely facing a prison sentence, rather than the probationary sentence recommended in the presentence report. He did not think, however, that the driving factor in the trial court's assessment was the accusations in the presentence report. *See id.* at 10-11. At the sentencing hearing, the judge asked Daly if he desired an evidentiary hearing regarding the allegations in the supplemental report, but he declined such a hearing. He did not recall how long he had to discuss this matter with petitioner prior to the judge asking at sentencing if counsel desired to have a hearing. *See id.* at 11-12.

On cross-examination, Daly testified he had conducted several hundred criminal cases in front of Judge Pickard in Lenawee County. During that time, it was his experience that Judge Pickard had developed a reputation on embezzlement cases in which he will ignore the guidelines and impose a prison term if restitution is not made prior to sentencing. In petitioner's case, Judge Pickard was "enraged" at sentencing and made it clear to the prosecutor that he was not happy with the plea bargain, which contained a ten year cap on the sentence. *See id.* at 14-15. Daly had also had an experience shortly before petitioner's case in which he represented a 17 year old defendant in a robbery case, where the top of the guidelines range was 15 years. Daly asked for an adjournment in that case and a psychological evaluation. After that, Judge Pickard substantially exceeded the guidelines, sentencing the defendant to 66 years in prison. *See id.* at 15-16. Those experiences, Daly testified, informed his strategy with respect to the decision not to have an

7

evidentiary hearing. Daly testified that he

> was afraid if she was up there and testifying, I was going to lose control of what was going on. Judge Pickard was already angry. He was angry that morning. You could see he was angry. And I didn't, I didn't see whether it was going to be any good coming out of, out of that hearing.
> The other thing is, particularly, Dr. Johnson. I was reasonably convinced that Dr. Johnson was just taking advantage of the situation; that he had embezzlement from Blue Cross and Blue Shield and was trying to find a scapegoat. But I wasn't at all convinced that Judge Pickard even cared about that. His whole thing was the prior record and restitution hadn't been made.

*Id.* at 16-17. Daly did have conversations with an attorney whereby petitioner would pay $40,000 in restitution immediately, in exchange for the victims foregoing an appearance at sentencing and request for a prison term. This information was included in the presentence report and disclosed to the judge. *See id.* at 17.

Daly testified that he was afraid that if he had a hearing, it would merely be a credibility contest between petitioner and Johnson, and he "knew which way Pickard was going to go on that. And I was convinced that Judge Pickard would have absolutely taken over any examination of the witness at that time." *Id.* at 20. Although Judge Pickard asked him several times if he wanted a hearing, he was mad and "after the second time he asked me, I was sure that I didn't want to have a hearing." *Id.* In particular, Daly was concerned that Judge Pickard "was already trying to find ways to have [petitioner] charged with the crimes. He had absolutely – he had indicated to the Prosecutor's Office that he wanted these other charges investigated because they could be, as he called it, stackable offenses." *Id.* at 20-21. In his opinion, by this point Judge Pickard was already disposed to impose the maximum possible sentence, and nothing could have come from a hearing but antagonizing Judge Pickard prior to imposing the sentence. *See id.* at 21-22.

On redirect examination, Daly testified that he did not contact Southworth, the Blue Cross

investigator. *See id.* at 22. He was sure that he advised petitioner of Judge Pickard's sentencing practices, because they were trying to raise money to pay restitution right up to the time of sentencing. *See id.* at 23-24. He was aware that any claim that Johnson's and Eby's allegations were untrue would not be preserved for review if he failed to request a hearing. *See id.* at 24.

The second witness to testify at the evidentiary hearing was John R. Southworth, currently a manager in a Blue Cross Blue Shield health care fraud unit. He formerly worked as an officer in the Jackson County Sheriff's Department and as a commander in the Washtenaw County Sheriff's Department. *See id.* at 26-27. He testified that petitioner contacted Blue Cross to report misconduct by Dr. Johnson. He spoke with petitioner on several occasions. She alleged that Johnson, a chiropractor, was submitting bills for services which were not actually performed, including for x-rays even though he did not have an x-ray machine. *See id.* at 27-28. As a result of his investigation of these allegations, eighty-seven counts of health care fraud were brought against Johnson in state court. These charges were brought after petitioner was sentenced in her case. Johnson eventually pleaded guilty in state court. *See id.* at 28. Neither petitioner's attorney nor a probation officer contacted him in connection with petitioner's case. Petitioner was up front with him about the charges pending against her when she spoke with Southworth. Everything she told him was corroborated through other avenues of investigation. *See id.* at 29-30. When he spoke with Johnson, Johnson alleged that petitioner had been stealing from him and attempted to shift blame to her for the fraud allegations against him. However, Johnson was unable to provide any substantiation for his allegations. *See id.* at 30-33. Neither Johnson nor Eby had reported their allegations to the police. *See id.* at 31. He did not pay petitioner for cooperating with him. *See id.* at 31.

On cross-examination, Southworth testified that Eby had come to his attention as part of the investigation of Johnson. During his discussions with Eby, she indicated that petitioner had stolen some money from her. However, he did not independently investigate these allegations. *See id.* at 34-35. Southworth admitted that he could not testify as to whether or not petitioner in fact stole money from Eby. *See id.* at 35-37.

The final witness at the hearing was petitioner. She testified that she did not see the supplemental presentence report until the morning of sentencing. She met counsel at the courthouse at 8:00 a.m. to discuss the report with Daly. She told him that the allegations were untrue, and that she had been working with Southworth at Blue Cross. Daly informed her that they did not need to contact Southworth, but did not explain why it was unnecessary. *See id.* at 38-39. After discussing the matter with her, Daly attended a conference in Judge Pickard's chambers. When he came out, he told her that she was about to get a long prison sentence. *See id.* at 39-40. Prior to seeing the supplemental report, she was under the impression that she would receive a probationary sentence with one year in the county jail based on the original presentence report. *See id.* at 40. At the time the judge asked petitioner and Daly whether they desired to have a hearing, she did not understand the process. Daly did not explain to her that if she did not request a hearing, the judge could accept the supplemental report as true. *See id.* at 40-41. She denied the allegations relating to Eby, claiming that she was authorized to withdraw the money from the account they shared as part of an informal business venture. *See id.* at 41-43. Eby told Johnson that she was cooperating with Blue Cross in its investigation of him, and he fired petitioner the same day. *See id.* at 43.

On cross-examination, petitioner did not dispute that she embezzled $165,000 from Dr.

10

Double. She was embezzling him for a good portion of the four years she worked for him. *See id.* at 44-45. She came forward with the embezzlement herself, and Daly was attempting to work out a civil agreement with Dr. Double when the charges were filed. *See id.* at 45. When she met with Daly regarding the charges, he did not promise her that she would receive a certain sentence. He did, however, indicate that the judge usually sentences in accordance with the recommendation in the presentence report. *See id.* at 47. She admitted that when she worked for Johnson she was responsible for billing the insurance company and depositing the payments, but denied that she ever embezzled any of this money. *See id.* at 52-53, 57-58. Although she testified that her actions with regard to the joint business with Eby were consistent with the informal agreement they had, she admitted that she signed Eby's name on a check without Eby's permission. *See id.* at 54-56. She denied having any discussion with Daly regarding whether or not they should have a hearing. She simply followed his advice that they did not need to have a hearing. *See id.* at 58-60.

B.  *Legal Standard*

Because petitioner's application was filed after April 24, 1996, her petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). Here, however, petitioner's claims were never "adjudicated on the merits" in state court. "Where, as here, the state court did not assess the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply." *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *see also, Cone v. Bell*, 129 S. Ct. 1769, 1784 (2009); *Medellin v. Dretke*, 544 U.S. 660, 679-80 (2005). Thus, petitioner's claims are reviewed *de novo*. *See Cone*, 129 S. Ct. at 1784.

The Sixth Amendment right to counsel and the right to effective assistance of counsel protects the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687.[2] These two components are mixed questions of law and fact. *See id.* at 688. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of

---

[2]In *Strickland*, the Court explicitly declined to consider whether the standard set forth in that decision applied to non-capital sentencing proceedings, noting that "[w]e need not consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance." *Strickland*, 466 U.S. at 686; *see also, Caspari v. Bohlen*, 510 U.S. 383, 393 (1994). Noting this fact, that Ninth Circuit has held that *Strickland* does not constitute "clearly established Federal law" under § 2254(d) with respect to the effectiveness of counsel at non-capital sentencing proceedings. *See Davis v. Grigas*, 443 F. 3d 1155, 1158 (9th Cir. 2006); *Cooper-Smith v. Palmateer*, 397 F. 3d 1236, 1244 (9th Cir. 2005). In *Glover v. United States*, 531 U.S. 198 (2001), the Court considered what type of sentencing error constitutes prejudice under *Strickland*, but did not explicitly consider or hold that either prong of the *Strickland* test applies to noncapital sentencing, or how the deficient performance prong should be applied in such cases. The Court need not resolve this issue, because as noted above the AEDPA standard is inapplicable here, and under *de novo* review the Sixth Circuit has held that "*Strickland* applies in noncapital sentencing proceedings." *Gibb v. United States*, 3 Fed. Appx. 404, 405 (6th Cir. 2001) (citing *Arredondo v. United States*, 178 F.3d 778, 783-84 (6th Cir. 1999)).

the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. Further, it is petitioner's burden to establish the elements of her ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993).

C.  *Analysis*

Although this case presents a close question, the Court should conclude that petitioner has failed to meet her burden of demonstrating that counsel's performance was deficient. Petitioner contends that counsel was ineffective for failing to request a hearing on the embezzlement claims reflected in the supplemental report. In particular, she contends that counsel's decision not to request a hearing was not a reasonable strategic decision because it was not made after a thorough investigation of the facts. Specifically, she contends that "counsel was clearly ineffective for failure to investigate and interview BCBSM investigator John Southworth, whose phone number

13

Petitioner had provided. Had counsel done so, he would have obtained information which indicated that Petitioner was truthful in her denial of the accusations of other offense by Johnson and Eby." Pet'r's Supp. Post-Hr'g Br., at 15.

At the outset, petitioner vastly overstates the support Southworth would have provided her in any challenge to the embezzlement charges made by Johnson and Eby. While Southworth could have testified that petitioner was cooperative in his investigation of Johnson, and could have provided evidence of Johnson's own fraud thus weakening Johnson's credibility, Southworth could have offered no testimony going to whether petitioner embezzled from Johnson. While Southworth testified that he could not substantiate Johnson's allegations that petitioner was the one responsible for the fraud, *see id.* at 30-33, this conclusion does not bear on the independent factual issue of whether petitioner was embezzling from Johnson. And Southworth explicitly testified that he did not investigate Eby's allegations, and could not opine on whether petitioner had embezzled from Eby, *see id.* at 34-37.

Be that as it may, counsel does not have a duty to always pursue every avenue of investigation. Rather, counsel's duty is "to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691 (emphasis added). Here, petitioner's counsel concluded, based on his knowledge of the judge's sentencing practices and views of petitioner's case, that no good could come from a hearing and additional harm could result, regardless of the evidence presented. Contrary to the cases cited by petitioner, *see* Pet'r's Supp. Post-Hr'g Br., at 14 n.6, this is not a case where counsel had "no idea" why he chose not to hold a hearing or where counsel's decision was based on "ignorance" or "mistaken beliefs" regarding the law and facts. The question, therefore, is whether counsel's conclusion that

14

a hearing could not benefit, and could only harm, petitioner was a reasonable one.

Here, counsel asserted specific, thought-out, strategic reasons for declining to request a hearing. Petitioner does not dispute that these reasons actually motivated counsel's decision, and concedes that counsel explained to her the reason for his decision. Rather, petitioner contends that the reasons offered by counsel were insufficient to justify his decision to reject a hearing because, even if the hearing would not have changed the court's sentence, the failure to hold a hearing precluded her from challenging the court's sentence on appeal. However, counsel had good cause to be concerned about the effects of the hearing. As explained by counsel, and not disputed by petitioner, the sentencing judge routinely imposed harsh prison terms in embezzlement cases where restitution had not been made prior to sentencing. Further, counsel testified that the trial judge was angry at petitioner, and that the judge's tone in asking whether counsel desired a hearing appeared almost as a dare by the trial court. Counsel thus had a legitimate concern that exposing petitioner to the court's questioning at an evidentiary hearing could have resulted in the court finding a basis for imposing a harsher sentence or resulted in testimony by petitioner that could have formed the basis of additional charges against her. And counsel had well in mind a recent case before the same trial judge in which the judge appeared to have imposed a harsher sentence based on his client's request for a psychological evaluation. It was reasonable for counsel to rely upon his experience with Judge Pickard in deciding whether an evidentiary hearing should be sought. "When making strategic trial decisions, it is not unreasonable for trial counsel to factor in their own knowledge of and experiences with the practices and predispositions of opposing counsel and the presiding judge. Nor is it unreasonable to rely upon their own judgments as experienced trial attorneys." *Davis v. Polk*, No. 1:05CV29-W, 2007 WL 2898711, *25 (W.D.N.C. Sept. 28,

15

2007); *see also, Otte v. Houk*, No. 1:06cv1698, 2008 WL 408525, at *28 (N.D. Ohio Feb. 12, 2008); *Vinson v. McLemore*, No. 01-10290, 2006 WL 381663, at *5-*6 (E.D. Mich. Feb. 17, 2006), *aff'd*, 226 Fed. Appx. 582, 585 (6th Cir. 2007). *Strickland* itself suggests as much. *See Strickland*, 466 U.S. at 699 (counsel's decision to not investigate additional mitigating evidence at capital sentencing hearing did not constitute deficient performance in part because it was a strategic decision based on "the trial judge's views" which were "well known to counsel.").

As noted above, in reviewing the actions of trial counsel this court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Even if petitioner's attorney or this Court would have adopted a different strategy, it cannot be said that counsel's decision was "objectively unreasonable" and was "outside the wide range of professionally competent assistant." Counsel chose a strategy based on consideration of the facts of petitioner's case, the trial judge's sentencing practices, and the trial judge's temperament and views of petitioner's case. Petitioner has not overcome the presumption that this considered strategic decision was reasonable. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.[3]

This conclusion likewise resolves petitioner's claim that his appellate attorney was ineffective for failing to raise the ineffective assistance of trial counsel claim on direct appeal. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained above, petitioner's underlying

---

[3]Because petitioner has failed to demonstrate that counsel's performance was deficient, it is unnecessary to consider the prejudice component of the *Strickland* inquiry.

ineffective assistance of trial counsel claim is without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise that claim on direct appeal.

D.  *Recommendation Regarding Certificate of Appealability*

1.  *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.""" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of

probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.  *Analysis*

Here, although I conclude that petitioner is not entitled to habeas relief on her claim, the Court should find that this resolution is reasonably debatable, and thus that petitioner is entitled to a certificate of appealability. Petitioner's trial counsel claim necessitated an evidentiary hearing, and although counsel's decision appears to have been a reasonable strategic decision, it was nonetheless a decision which may have substantially impacted petitioner's sentence and her ability to appeal that sentence to the Michigan Court of Appeals. In these circumstances, the resolution of petitioner's ineffective assistance of counsel claims is reasonably debatable, and thus petitioner is entitled to a certificate of appealability with respect to her claims.

E. *Conclusion*

In view of the foregoing, the Court should conclude that counsel's performance in declining to request an evidentiary hearing at sentencing was reasonable, and thus that petitioner is not entitled to habeas relief on her ineffective assistance of trial counsel claim or her derivative ineffective assistance of appellate counsel claim. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. However, the Court should conclude that petitioner is entitled to a certificate of appealability with respect to these claims.

III.  NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: 6/8/10

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on June 8, 2010.

s/Eddrey Butts
Case Manager