UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELINE COLE

    Petitioner,                                  CASE NO. 08-CV-11109

v.                                               PAUL D. BORMAN
                                                  UNITED STATES DISTRICT JUDGE

MILLICENT WARREN                 MAG. JUDGE PAUL J. KOMIVES

    Respondent.
_____/

**ORDER
(1) REJECTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(2) GRANTING PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. §2254
(3) REMANDING TO STATE COURT FOR AN EVIDENTIARY HEARING
AND A RESENTENCING WITHIN 90 DAYS**

On October 27, 2004, Petitioner pled guilty to embezzling over $20,000, MCL § 750.174(5)(a), before Judge Timothy Pickard in Lenawee County Circuit Court. On November 22, 2004, a Presentence Report (PSR) that contained a Michigan guideline sentencing range of 5-23 months was provided to the parties.

On December 15, 2004, the day before Petitioner's sentencing, the probation officer authored a supplement to the initial PSR, alleging significant additional post-plea criminal embezzlement by Petitioner, based upon information received from Dr. Thomas Johnson, a recent employer, and from Paige Eby, a former business partner. Petitioner had been employed by Dr. Johnson subsequent to the embezzlement charged in the instant case.

Dr. Johnson's claims were significant both with regard to amount and to pattern of conduct: that while petitioner had been in his employment, she had embezzled $40,000 from his

1

practice. In the instant case, Petitioner had plead guilty to embezzling over $20,000 from a doctor's office.

When Petitioner was first provided the supplemental PSR by her counsel James W. Daly on December 16, 2004, the morning of the sentencing, she denied Dr. Johnson's allegation, and requested that her lawyer confirm and validate her innocence of Johnson's claims with Blue Cross Blue Shield (BCBS) investigator John Southworth to whom she had "blown the whistle" on Johnson. Her lawyer did not follow her direction to call Southworth.

At the sentencing hearing that morning, when Petitioner's lawyer told Judge Pickard that Petitioner denied that charge, the Judge offered to schedule an evidentiary hearing on that significant issue:

The Court: Mr. Daly, do you wish to challenge the accuracy or relevancy of any information in the pre-sentence investigation report or supplement?

Mr. Daly: Only as it relates to the reference to Dr. Johnson on what had happened there. Mrs. Cole indicates that she absolutely was not involved in any fraudulent activity with that, that she is working with the adjuster and whatever had happened with Dr. Johnson she did not embezzle any money there, period. That she wanted to make sure I informed the Court of that.

The Court: You want to have a hearing in that regard, Mr. Daly?

Mr. Daly: No, I do not, your Honor.

The Court: My question to you: do you wish to have a hearing on either one of those two? <u>We can call those people as witnesses</u>, Mr. Daly, if you wish.

TR. State Sentencing, Judge Pickard P.3 (emphasis added).

Thus, Judge Pickard offered defense counsel an opportunity to have a hearing on that issue: defense counsel rejected the Judge's offer; stating he had advised Defendant to not request a hearing, and she had followed his advice:

2

> . . . I asked Ms. Cole if she wants a hearing on that matter. She could have one. <u>I advised her that it is not in her best interests to have a hearing on that and she agreed not to have a hearing</u>.

TR. State Sentencing P.3 (emphasis added).

In sentencing Petitioner, Judge Pickard put significant emphasis on the Johnson allegations contained in the supplemental report:

> When we look at your <u>subsequent</u> record we have the <u>supplemental report</u>. You were a partner with Ms. Eby and you were in business. And while you were in business with her you stole $6500. That was all at the time that you were being prosecuted for this. That's absolutely appalling to me. I have never seen anything like that in my life.
>
> Then <u>Dr. Johnson</u> alleges that he has <u>$40,000</u> that <u>is missing</u> and that you were his billing, banker and bookkeeper. That <u>he has been kicked out of Blue Cross and Blue Shield</u> and he has a $40,000 discrepancy in his records. That <u>his family was deeply hurt</u> because of their personal relationship with you and considered you to be a very close friend, <u>just like in this case</u>.

TR. State Sentencing, Judge Pickard Pp. 7-8. (emphasis added).

It is clear (1) that the supplemental report information relating to Dr. Johnson had a significant impact on the sentencing judge, (2) that Petitioner had immediately and always denied the truthfulness of that information, and even more important, (3) that Petitioner had provided her attorney with the name of a quasi-law enforcement witness, Mr. Southworth, who would testify in support of her claim of innocence of Dr. Johnson's claims.

After Petitioner's trial counsel declined an evidentiary hearing, Judge Pickard, citing the allegations in the PSR <u>and</u>, in particular, the supplemental PSR, departed upward from the 5-23 month recommended term of incarceration under the Michigan sentencing guidelines as set forth in the initial PSR, to sentence petitioner to a term of 80-120 months incarceration. Tr. State

3

Sentencing, Judge Pickard P. 8-9, 11.

Petitioner exercised her right to appeal Judge Pickard's sentence, and requested appointment of appellate counsel. Her court-appointed counsel, Attorney C. Lance Cooper, from the get go, proceeded to commit a number of procedural errors in filing Petitioner's appeal.

Initially, Mr. Cooper attempted to file a "Brief on Appeal," when an Application for Leave to Appeal is required by Michigan's rules of appellate procedure. *See generally* MCR 7.205. When Mr. Cooper's brief was returned to him by the Court of Appeals, he filed an Application for Leave to Appeal, but his second attempt was, again, rife with procedural defects. Moreover, the only issue Mr. Cooper raised in his defective brief was virtually unintelligible:

> The trial judge committed reversible error by denying challenge [sic] the validity of sentencing guidelines and using factors incorporated in the sentencing guidelines calculations to impose and [sic] upward departure in sentencing Defendant.

U.S. Magistrate Judge Komives Report and Recommendation, 6/8/10, Pg. 4.

Petitioner then retained new appellate counsel, but before a corrected Application for Leave to Appeal could be filed, the Michigan Court of Appeals denied leave. *People v. Cole*, No. 261548 (Mich. Ct. App. May 20, 2005). Petitioner filed a motion for reconsideration, citing ineffective assistance of appellate counsel as a basis for relief and attaching the corrected Application for Leave to Appeal. Petitioner's motion was denied. Leave to appeal to the Michigan Supreme Court was also denied. *People v. Cole*, 474 Mich. 1085 (March 22, 2006).

Petitioner then filed a motion for relief from judgment with the trial court in Lenawee County, raising her ineffective assistance claim regarding trial and appellate counsel.

A hearing was held on Petitioner's Motion for Relief From Judgment on July 17, 2006,

4

before Judge Pickard. Petitioner was represented by Mark Hugger, Esq., who argued that her trial counsel "should have taken this court up on its offer to conduct an evidentiary hearing regarding Dr. Johnson." TR. Lenawee Motion for Relief Hearing, July 17, 2006, P.2. Hugger noted that "the court used the allegations by Dr. Johnson as a basis for the departure." *Id*.

While Judge Pickard noted that there was also an allegation that Petitioner had embezzled from a friend and business partner of Petitioner, Mr. Hugger sought to explain that this was not correct, that this was merely a "disagreement over the partnership money" and that "Ms. Cole relinquished her share of the partnership." *Id*. at 4. When Judge Pickard argued to the contrary, Mr. Hugger reiterated; "This is why there should have been from trial counsel an evidentiary hearing. There was no paper work submitted. These are statements that are included in the pre-sentence interview." *Id*. at 4.

Mr. Hugger pointed out that Petitioner did not have competent counsel on appeal to raise the issue (Mr. Cooper). Hugger noted that in "the initial brief filed by Mr. Cooper [sic] there was no argument that trial counsel was ineffective." *Id*. at 7. Judge Pickard stated that the "competent counsel on appeal [issue] is not with this court." *Id*. at 6.

Judge Pickard denied Cole's motion because "there are several of these things that could have been raised on appeal and they weren't." *Id*. at 8. As to Dr. Johnson's credibility, "he wasn't a witness anyways." *Id*. This Court notes that Dr. Johnson's testimony was not the issue – Mr. Southworth's testimony was the issue.

Finally, as the hearing before Judge Pickard was drawing to a close, the Judge stated that Petitioner's sentencing counsel "chose not to" have a hearing. *Id*. at 9. Petitioner's counsel responded:

5

> Your Honor, if I can just interject on the relief that I asked for. I did ask for an evidentiary hearing.

*Id*. at 9.

Judge Pickard concluded by ruling that this issue could have been raised on appeal and it wasn't, and he denied Petitioner's request for an evidentiary hearing. *Id*. at 10.

Subsequent state court appeals were unavailing. *See People v. Cole*, 480 Mich. 859 (2007); #134052. "The defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Court of Appeal No. 272559.

Thus the Michigan appellate courts did not consider Petitioner's claim of ineffective assistance of trial counsel.

On August 1, 2008, Petitioner filed the instant Petition for Habeas Corpus with this Court, and requested an evidentiary hearing. Petitioner raises ineffective assistance of counsel claims regarding both her trial counsel, Mr. Daly, and her original appellate counsel, Mr. Cooper. Respondent filed an Answer on September 22, 2008.

The following standard is applicable in Federal habeas corpus cases:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding

28 U.S.C. §2254(d).

The Supreme Court has stated that, "a state-court decision is contrary to [Supreme Court] precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at [opposite result]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). Moreover, "a state-court decision involves an unreasonable application of [Supreme Court] precedent if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. In the instant case, the state courts never decided the issue of ineffective assistance of counsel.

Ineffective assistance of counsel claims are governed by the Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668 (1984). "Under *Strickland*, counsel's assistance is only constitutionally ineffective if it is both deficient and prejudicial." *English v. Romanowski*, 602 F.3d 714. 725 (6th Cir. 2010). As explained by the Supreme Court:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

Regarding the "deficiency" element of an ineffective assistance claim, the Sixth Circuit has stated:

> *Strickland's* deficiency prong requires proof that defense counsel's trial attorney's representation "fell below an objective standard of reasonableness." When evaluating trial performance, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy."

*English*, 602 F.3d at 726 (quoting *Strickland*, 466 U.S. at 688, 689). Regarding the "prejudice" element of an ineffective assistance claim, the Sixth Circuit has stated:

> Under *Strickland's* prejudice prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of [the trial] would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*English*, 602 F.3d at 726 (quoting *Strickland*, 466 U.S. at 694).

Additionally, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "The duty to investigate derives from counsel's basic function, which is to make the adversarial testing process work in the particular case." *Id*. (quotation marks and citation omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). Trial counsel's failure to investigate is unreasonable if the failure results from inattention or neglect, as opposed to reasoned strategic judgment. *See Wiggins v. Smith*, 539 U.S. 510, 526 (2003). Importantly,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.

*Strickland*, 466 U.S. at 690-91.

A more recent Sixth Circuit Opinion has set the standard for Petitioner in these terms:

> To prevail on his ineffective assistance of counsel claims, Babick must first show that his trial counsel's "representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Babick must then establish prejudice, which requires him to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." See *Id*. at 694.

*Babick v. Berguis*, ___F.3d___, 2010 WL3447697 (6th Cir. 2010) Slip Op. P.7.

In the instant case, Petitioner met both requirements. As discussed below, Petitioner had established that her representation both at her sentencing and at her initial appeal fell below an objective standard of reasonableness. Further, Petitioner has also established that but for the unprofessional errors by both plea counsel and her initial appellate counsel, there is a reasonable probability that her sentencing would have resulted in a lesser period of incarceration.

In the instant case, U.S. Magistrate Judge Paul J. Komives granted Petitioner an evidentiary hearing on her claim of ineffective assistance of counsel on January 8, 2010.

Petitioner's plea counsel James Daly testified as follows, in pertinent part:

Q. . . . [Y]ou appreciated that this was significant, new information coming to you, just on the eve of sentencing?

A. Yes.

Federal Hearing, Daly P.9.

Daly acknowledged that Petitioner had denied the allegations that she had stolen money from Paige Eby. Fed. Hearing, Daly P.9.

Most significant to the instant issue regarding Dr. Johnson's claims and Petitioner's denials, Daly testified:

9

> Q. Do you recall Ms. Cole telling you that she had participated – she had cooperated with a Blue Cross fraud investigator who was investigating Dr. Johnson and his practice?
>
> A. Yes.
> . . .
>
> Q. And do you recall her telling you that Mr. Southworth could be contacted and could be a potential witness to try and rebut those accusations?
>
> A. I don't remember that. If she, if she said she did, <u>I'm not disputing that</u>. <u>I don't remember that</u>.

Fed. Hearing, Daly TR. P. 10 (emphasis added).

Daly also didn't recall informing Petitioner that if the defense did not present evidence to contest the accusations in the supplemental PSR, Judge Pickard would accept Johnson's accusations as true:

> Q. Do you recall whether you explained to Ms. Cole that if there was not a contested hearing held, the judge could accept the accusations in the supplemental report as true?
> A. I don't know whether I told her that or not.
> . . .
> Q. In any event then, the judge would up imposing the maximum sentence possible?
> A. Yes.
> Q. Under the embezzlement statute?
> A. Yes.
> Q. Despite the fact that the Michigan sentencing guidelines were, I believe, 5 to 23 months?
> A. Yes.

Fed. Hearing, Daly TR. P. 12.

Daly asserted that despite the Johnson allegations in the supplemental presentence report, and despite Judge Pickard's statements/invitations at the sentencing, that he had meet with Judge Pickard and the prosecutor in chambers earlier that morning, prior to the sentencing, that left him with the impression that the accusations in the supplemental report were not the driving factor in

the Judge's decision to ignore the 5-23 month sentencing guideline range contained in the original PSR, to impose a significantly higher sentence. Fed. Hearing, Daly TR. P.12. Any justification for that impression is completely undermined by the sentencing transcript evidencing Judge Pickard's emphasis on the supplemental report at the sentencing. Hearing TR. P.12.

Counsel Daly on cross examination by the State, mentioned a prior bad experience before Judge Pickard at which he had requested an adjournment of the sentencing hearing, and then at the subsequent sentencing Judge Pickard had imposed a sentence substantially in excess of the guidelines.

Mr. Daly stated that his prior experiences with Judge Pickard had informed his instant strategy, thusly:

> I was afraid that if she was up there and testifying, I was going to lose control of what was going on. Judge Pickard . . . was angry that morning. . . . And I didn't see whether it was going to be any good coming out of, out of that hearing.
> The other thing is, particularly, Dr. Johnson. I was reasonably convinced that Dr. Johnson was just taking advantage of the situation; that he had embezzlement (sic) from Blue Cross and Blue Shield and was trying to find a scapegoat. But I wasn't at all convinced that Judge Pickard even cared about that. His whole thing was the prior record and restitution hadn't been made.

*Id*. TR. Pp. 16-17. This latter testimony is undermined by the sentencing transcript, which evidenced Judge Pickard's emphasis on the supplemental report involving Dr. Johnson at the sentencing.

This critical exchange, between Daly and counsel for respondent, indicates in Daly's own words that going into the sentencing, Daly expected that his client would receive the maximum sentence:

11

> Q. Did you think that you, by challenging the allegations with respect to Dr. Johnson and Ms. Eby would thereby be risking an even more severe sentence?
>
> A. Well, as it turned out, no.
>
> . . .
>
> A. I thought he was going to impose a maximum sentence.

*Id.* at 18.

Given that defense counsel Daly thought, going into the sentencing hearing, that Judge Pickard was going to impose the maximum sentence, and he knew that Petitioner had denied the Johnson claim in the supplemental report, and that BCBS investigator Southworth could testify to rebut Dr. Johnson's criminal allegations against Petitioner, there is no conceivable strategic basis for rejecting Judge Pickard's offers to adjourn the sentencing, and for Daly to call Southworth to testify at the adjourned hearing.

Indeed, further bolstering the conclusion, that an adjourned sentencing hearing would not have negatively impacted Petitioner's sentence was this exchange between Daly and Petitioner's attorney at the hearing:

> Q. Okay. So there was no concern that she would have been recharged as fourth habitual; that wasn't at stake?
>
> A. Absolutely not.
>
> Q. But, in your view, what was at stake was antagonizing?
>
> A. Yes, I was trying to get away from a <u>maximum sentence which, by then, I was sure was going to come</u>.

Fed. Hearing, Daly P.21 (emphasis added).

Thus, Daly testified at this hearing that he was sure that Judge Pickard was going to impose the maximum sentence, but nevertheless rejected Judge Pickard's offers to adjourn the

12

sentencing to allow him to present significant testimony favorable to Petitioner. Judge Pickard never had an opportunity to consider this significant testimony that would likely have provided a convincing basis to impose a less than maximum sentence. Further, the introduction of that testimony would have set forth a strong record for an appeal if Judge Pickard gave a maximum sentence based in part on Dr. Johnson's allegations.

Daly, Petitioner's sentencing counsel testified that he did not telephone Blue Cross investigator John Southworth to investigate whether Dr. Johnson's allegations were undermined by his investigation, which would have enhanced Petitioner's credibility and evidenced law-abiding post-conviction conduct. *Id*. at 22. Petitioner's counsel gave the following reason for not calling Investigator Southworth:

> I was already convinced that, that Johnson was lying about everything. There's no doubt in my mind that Jackie [Cole] was being made a scapegoat in this. I just didn't think it mattered. Judge Pickard was not even concerned with that Johnson case, in my opinion.

TR. P.25. This testimony distorts reality, given Judge Pickard's constant emphasizing of the supplemental report before and at the sentencing, and his willingness to provide Petitioner with an evidentiary hearing on testimony by Southworth would have not only undermined Johnson's claims, but also would have provided evidence of her proactively assisting law enforcement in uncovering Dr. Johnson's fraudulent activities.

Thus, Judge Pickard's apparent mind-set going into the December 16, 2004 sentencing hearing, that Petitioner was an unconscionable serial embezzler, would have been undermined by evidence of her assisting law enforcement and the unraveling of Dr. Johnson's claims.

Significantly, there was additional critical evidence in Petitioner's favor, that Daly never put forth in his allocation: that Petitioner had turned herself into authorities on the instant crime

13

– she did not wait for authorities to charge her. See *infra*.

For defense counsel to say that Southworth's testimony would not have mattered is inherently incredible; there was no reasonable basis in fact or law or strategy, for Daly to reject Judge Pickard's offer to hold a hearing.

Further undermining Respondent's claim of a strategic purpose in Daly's failure to take up Judge Pickard's request for an adjourned sentencing hearing, is John Southworth's testimony at the Federal evidentiary hearing. He testified that Petitioner called the BCBS' antifraud hotline alleging misconduct by Dr. Johnson in Adrian, Michigan. Fed. Hearing, Southworth TR. P.27. The BCBS investigation resulted in 87 state fraud charge counts filed against Dr. Johnson after the instant sentencing.

Mr. Southworth testified, that prior to the instant sentencing, he was not contacted by petitioner's attorney or her probation officer, to confirm her assertion that she had provided critical information regarding Dr. Johnson's health care fraud.
The Court notes the following relevant Southworth testimony:

> If I might, would like to inform the Court that Jacqueline Cole was very much up front with me when I first interviewed her. She told me about the pending charges . . . . Everything she did tell us or tell me was corroborated through the investigation.
> . . . .
> And I suggested to both Paige Eby and Dr. Johnson, that if there was any truth at all to what they were alleging, they should report these matters to the Adrian Police Department. Neither case was ever reported.

Fed. Hearing, Southworth Pp. 29-31.

Finally, Petitioner Cole testified regarding her response when, on the morning of her sentencing, defense counsel showed her the supplement to her presentence report. (Fed. Hearing,

14

Cole TR. P. 38, *et seq.*)

> I told him [Counsel Daly] that both of the accusations were untrue. In regards with Dr. Johnson, I explained that I had been working with Blue Cross and Mr. Southworth, and that he could phone him, possibly to testify or you know, corroborate that I had been working with him and that I hadn't taken anything from Dr. Johnson. And I told him that I didn't embezzle anything from Dr. Johnson.
>
> . . .
>
> I had Mr. Southworth's telephone number.

Q. What did Mr. Daly say in response to the suggestion to contact Mr. Southworth?

A. That we didn't need to.

Q. Did he explain to you why that was.

A. No.

Q. What happened then after you told Mr. Daly that this was not true?

A. I believe he went – that's when he went back into Judge Pickard's chambers and discussed, I was assuming, my sentencing. And as he came out, we were walking into the courtroom, he told me that I was about to get a long prison sentence.

Q. Now, prior to seeing the – before seeing the supplemental report, were you familiar with the recommendation that had initially been made in the presentence report?

A. Yes, I was told that five years probation, with a year in the county jail, which would be six to nine months with good time, he said.

. . .

Q. How long have you been in prison now?

A. Five years. I'm starting my sixth year.

Q. When you were in the courtroom do you recall the judge asking Mr. Daly, and asking you, if you wanted an evid – Mr. Daly advised that the Court, do you recall this, that you denied the accusations in the supplemental report?

A. Yes.

15

Q. And do you recall the judge asking both you and Mr. Daly if you wanted a hearing on that?

A. Yes.

Q. Mr. Daly said no?

A. Yes, he did.

Q. And you also did not ask for one, right?

A. No.

Q. At that time, did you understand the process? Did you understand what the consequence would be if you did not hold a hearing?

A. No, I did not.

Q. Did Mr. Daly ever – did Mr. Daly explain to you that if you did not request an evidentiary hearing on an issue you contested, that the judge could take the supplemental report as true?

A. No.

Fed. Hearing, Cole Pp. 39-41.

Significantly, the Federal evidentiary hearing brought out a fact, never mentioned by Petitioner's counsel at the sentencing, that would have cast her in a significantly more positive light before Judge Pickard:

Q. How were you caught?

A. I'm not – I went and told my attorney, Mr. Daly, what I had been doing, what I had done, because I had assumed Dr. Dauble had figured it out.
. . .
[Mr. Daly] contacted Dr. Dauble, who had already realized what had happened. And they were trying to work something out and, a civil agreement between the two of us.

Q. So in effect you came forward?

A. Yes.

16

> Q.   And admitted your guilt?
>
> A.   Yes.
>
> Q.   -- before you were formally charged?
>
> A.   Yes. Yes.
>
> Q.   Or interviewed by the police?
>
> A.   Yes.

Thus, Petitioner's lawyer was well aware of this significant information favorable to Petitioner at sentencing – her going to the authorities to confess – yet, for some unfathomable reason, Daly did not mention this to Judge Pickard.

Petitioner was asked why she went to Mr. Daly, her lawyer, before any charges had been brought:

> Q.   So, were you looking for perhaps the lowest sentence you could obtain? Was that the purpose of going to Mr. Daly?
>
> A.   No. The reason I went to him was I, I mean, my conscience. I was scared. I just wanted to get -- I couldn't -- I wanted it to come out. I couldn't live with it anymore.

Fed. Hearing, Cole TR. P.47. This testimony, not contradicted by counsel Daly, of critical evidence in Petitioner's favor, never presented by defense counsel Daly, establishes yet even more evidence of Daly's ineffective assistance of counsel. The Court finds that the significance of this critical information to Petitioner's sentencing is clear and abundant, and the prejudice to Petitioner is evident.

As to the sentencing process, Petitioner testified in pertinent part as follows:

> Q.   When you met with Mr. Daly prior to sentencing did he ever promise you that you would receive a certain sentence?

> A. No. The only thing he did say is the judge usually goes by what the PSI and the Probation Department recommends.
>
> Q. Okay. And did he then estimate for you what he thought your sentence would be?
>
> A. Yeah. Five years probation and the county jail time.

Cole TR. Pp. 47-48.

With regard to the actual sentencing, Petitioner, on cross-examination testified in pertinent part as follows:

> Q. So, but you read that supplemental report the morning before sentencing?
>
> A. Yes.
>
> Q. And you read it with your counsel?
>
> A. Yes.
>
> Q. And you told him that those allegations were false?
>
> A. Yes.
>
> Q. Now, did you tell him I don't want to admit that, I don't want to have a hearing, anything in that respect? I would like to challenge this at sentencing?
>
> A. I just kept reiterating that it wasn't true and that I could prove that it wasn't true, is what I kept saying to him.
>     . . . .
> A. All the statements made by Johnson were false.

Fed. Hearing, Cole TR. Pp. 53-54.

As to whether to request a sentencing hearing on the supplemental report Petitioner testified as follows, in pertinent part:

> Q. Do you recall your discussion with him, [counsel] whether or not you should have a hearing on those allegations?
>
> A. There was no discussion. I mean, we were standing – I was standing getting sentenced, and I was looking at him saying that's not true.

18

> Q. Okay, so –
>
> A. And that's when Judge Pickard asked if we wanted a hearing. And Mr. Daly said we didn't.
> . . . .
>
> Q. So did he discuss with you the fact that you could have a hearing?
>
> A. Only when Judge Pickard asked me do I want a hearing, right then on the record – all the discussion is right there, what was said is right there. He turned to me and said you don't need one.
>
> Q. And you agreed to that.
>
> A. Yes.

Fed. Hearing, Cole TR. Pp.59-60.

On June 8, 2010, Magistrate Judge Komives issued a Report and Recommendation concluding that Petitioner is not entitled to habeas relief.

This Court concludes otherwise.

This Court finds that the representation provided by plea attorney James Daly, and by initial appellate attorney Lance Cooper fell well below any objective standard of reasonableness. This Court finds, further that but for the unprofessional errors by counsel, Petitioners sentence would have been different, to wit, she would have received a lesser period of incarceration.

The aforementioned facts clearly establish that Petitioner was deprived of effective assistance of counsel at her sentencing, that the prejudice was significant, that if the evidentiary hearing had occurred and the relevant information from that hearing in particular was Southworth's testimony had been presented at the sentencing, the sentence would likely have been less. Further, Petitioner never received a hearing on those issues in the state appellate courts because of ineffective assistance of initial appeal counsel. For these reasons, the Court grants the

Petition for a Writ of Habeas Corpus and orders an evidentiary hearing at a state court resentencing within 90 days.

SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: October 14, 2010

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on October 14, 2010.

s/Denise Goodine
Case Manager